UNITED STATED DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

---

| | | |
|---|---|---|
| Ryeco LLC<br>6700 Essington Avenue<br>Philadelphia, Pennsylvania 19153<br><br>**Plaintiff,**<br><br>vs.<br><br>Selective Insurance Company<br>40 Wantage Avenue<br>Branchville New Jersey 07890<br><br>**Defendant.** | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No.<br><br><br>**Complaint & Jury Trial Demand** |

---

Plaintiff, Ryeco, LLC ("**Plaintiff**" or "**Ryeco**") by way of Complaint against the Defendant Selective Insurance Company (the "**Defendant**" or "**Selective**") says:

**I.    Introduction**

1.   Plaintiff, Ryeco, LLC initiates this action against the Defendant (i) pursuant to the Declaratory Judgment Act 42 Pa. C.S.A. §7531 for the purpose of determining the parties' legal rights and obligations of the parties under a Commercial Property Insurance Policy #229954900 (the "**Policy**"; Exhibit "A"); (ii) breach of contract ; (iii) breach of the implied covenant of good faith and fair dealing and (iv) bad faith as defined by 42 Pa. S.C. §8371.

2.   The core factual allegations are not in material dispute. Plaintiff's claims arise from more than $1,400,000 in fraudulent wire transfers initiated from the Plaintiff's bank accounts by a third party "hacker". The wire transfers were to accounts not associated with the Plaintiff's business or any creditor to whom they owed money.

3. The Policy Selective sold to Plaintiff provided for coverage as follows:

**Forgery or Alteration**

a. We will pay for loss resulting from "<u>forgery</u>" or alteration of checks, drafts, promissory notes or similar written promises, <u>orders or directions to pay a sum certain in "money"</u> that are:

(1) Made or drawn upon you; or
(2) Made or drawn by one acting as your agent;

Or that are purported to have been so made or draw.

4. "Forgery" is defined under the Policy to mean the:

[s]igning of the name of another person or organization with the intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

5. For months, the Defendant's representatives advised the Plaintiff that his claim was "in process" and would take a while-but it looked "good". Defendant made the foregoing representations until Plaintiff renewed the Policy. Even though Ryeco's claim satisfied all definitional parameters established under the terms of the Policy, Selective refused to pay the benefits due thereunder after the Policy was renewed.

6. And, when Plaintiff proceeded to prosecute and settle the claims against the financial institution which had improperly wired the funds (the "**Bank**"); the Defendant advanced the position that the "settlement" violated Ryeco's obligation to assign or transfer its rights to the claim to Selective. Thus, Selective asserted that Plaintiff had impaired its rights and voided its obligations under the Policy. [1]

---

[1] The Bank is not identified in this Complaint to protect the integrity of the settlement entered by the parties.

7. Selective's actions were a breach of the Policy and in "bad faith" as exemplified by their refusal to cover the claim; its subsequent and inconsistent assertion that the settlement with the Bank somehow impaired the Defendants' rights.

8. The Defendant's refusal to pay the policy benefits due caused the Plaintiff damages exceeding $250,000, attorney fees and costs; and required the Plaintiff's principals to advance monies to the business to ensure it operated consistent with past practices.

9. Consequently, Plaintiff seeks a declaratory judgment that Policy issued by the Defendants covered Plaintiff's claims; and further awarding Ryeco damages arising for the Defendants breach thereof and for bad faith, including but not limited to monetary losses and counsel fees incurred in the prosecution of the underlying claim.

**II.     Jurisdiction and Venue**

10. Pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction as diversity of citizenship exists between the litigants and the damages sought exceed $75,000, exclusive of interest and attorney fees.

11. Venue is properly vested in this judicial district as the Defendant regularly engage in business in the Commonwealth of Pennsylvania and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**III.    The Parties**

9. Ryeco is a resident of the State of Pennsylvania with its principle place of business at 6700 Essington Avenue Philadelphia, Pennsylvania 19153.

10. Selective is a resident of the State of New Jersey and maintains its corporate headquarters at 40 Wantage Avenue Branchville, New Jersey 07890. Defendant routinely engages in business in the Commonwealth of Pennsylvania.

IV.     **Statement of Material Facts**

A.  Plaintiff's Business and the Forgery.

11. Plaintiff has operated a produce market for the past 40 plus years; and in the Philadelphia Wholesale Produce Market for the past 22 years.

12. Plaintiff is a full-line fruit and vegetable receiver and distributor, handling product from 5 continents around the world.

13. Ryeco operates 24 hours a day from 6am Sunday to 5pm Friday. The Plaintiff's mission is to facilitate its customers' growth and profit margin by offering an extensive product line with excellent quality and aggressive pricing.

14. The "operation" and international nature of Ryeco's business requires it to "wire-transfer" funds across the globe as part of its ongoing operation.

15. To safeguard its' business interests, Plaintiff purchased the Policy from Selective.

16. Selective is the 35th largest property and casualty group in the United States, employing over 2,000 people. Defendant represents that it is:

- ❖ Best in Class-Customer Service
- ❖ Fast in Response to Inquiries and Claims

17. In reliance on these representations and its claim of competitive pricing Plaintiff purchased the Policy for the time frame September 24, 2017 to September 24, 2018, including Commercial Crime Coverage.

B. The Policy

18. Pursuant to the Policy, Coverage is provided (under the express insuring agreements, limits, exclusions, conditions, definitions and endorsements) on a loss sustained basis for:

[l]oss you sustained resulting directly from an "occurrence" taking place during the Policy Period….which is discovered by you during the Policy Period…(Policy § A p. 1).

19. The Coverage Schedule declarations identified that Ryeco was covered for up to $250,000 in losses the event of a "Forgery or Alteration".

20. Forgery or Alteration is defined under the Policy as follows"

>   2. **Forgery or Alteration**
>
>   a. We will pay for loss resulting from "<u>forgery</u>" or alteration of checks, drafts, promissory notes or similar written promises, <u>orders or directions to pay a sum certain in "money"</u> that are:
>
>   (1) Made or drawn upon you; or
>   (2) Made or drawn by one acting as your agent;
>
>   Or that are purported to have been so made or draw.

21. "Forgery" is defined under the Policy to mean the:

>   [s]igning of the name of another person or organization with the intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

22. Between February 9, 2018 and February 22, 2018, a third-party (the "**Hacker**") based out of Johannesburg, Boksburg or Kempton Park in the country of South Africa obtained access to several Ryeco executives' computers and email accounts.

23. The unknown Hacker used the Ryeco executive emails to direct to the Bank wire instructions containing the forged signature of one of Ryeco's principles.

24. The Bank, acting upon the wire instructions received from the Hacker wired a total of $1,461, 897.00 to various international accounts located in Indonesia and Thailand.

25. The funds were wired on the following dates and in the following amounts:

February 9, 2018 in the amount of $57,435

    February 9, 2018 in the amount of $111,233

    February 9, 2018 in the amount of $76,864

    February 13, 2018 in the amount of $63,500

    February 15, 2018 in the amount of $120,000

    February 15, 2018 in the amount of $96,733

    February 15, 2018 in the amount of $73,565

    February 16, 2018 in the amount of $91,485

    February 16, 2018 in the amount of $84,500

    February 20, 2018 in the amount of $133,435

    February 20, 2018 in the amount of $112,000

    February 22, 2018 in the amount of $119,255

    February 22, 2018 in the amount of $48,364

    February 22, 2018 in the amount of $125,428

    February 22, 2018 in the amount of $148,100

26. The Bank, consistent with past practices, directed to the Ryeco executive an email confirming the wire transfer. However, the Hacker intercepted and deleted each of the emails before they could be reviewed.

27. Eventually, Ryeco discovered the infiltration of its' computer system and notified the Bank and Selective.

28. In response, the Bank retained a third-party cyber-security forensic investigation team. The cyber-security forensic investigation team confirmed the Hacker's infiltration of Plaintiff's computer and email system and the corresponding wire transfer of the foregoing funds.

29. The Plaintiff provided to Selective the cyber-security forensic report; the forged documents and the FBI IC3 reports detailing the fraud and losses sustained. Repeatedly, Selective

advised the Plaintiff that its claim was being processed and it "looked good" and to for all intents and purposes trust the process.

30.  Notwithstanding that the events described above established a "covered" loss, Selective failed and refused to pay Ryeco's claim, once the Plaintiff renewed its Policy. Defendants' refusal left the Plaintiff in operating distress and forced its executives and principles to advance funds to ensure business would continue to operate in the normal course.

31.  Accordingly, Ryeco, with the Defendant's full knowledge, pursued the Bank to recover some of its losses.

32.  Eventually, the Bank and Ryeco reached a settlement agreement by which the Plaintiff recovered some, but not all, of its losses.

33.  In response, Selective advised Plaintiff that it had voided its coverage by way of the foregoing settlement because it had "impaired" its interest in the claim against the Bank.

## Count I
## Breach of Contract

34.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 33 as is set forth herein at length.

35.  In or about September of 2017, Plaintiff purchased the Policy for the express purpose of obtaining coverage to protect its business against a forgery or alteration in connection with its banking and finance obligations.

36.  Pursuant to the Policy, Coverage is provided (under the express insuring agreements, limits, exclusions, conditions, definitions and endorsements) on a loss sustained basis for a:

> [l]oss you sustained resulting directly from an "occurrence" taking place during the Policy Period….which is discovered by you during the Policy Period…

(Policy § A p. 1).

37. The Coverage Schedule declarations identified that Ryeco was covered for up to $250,000 in losses the event of a "Forgery or Alteration".

38. Forgery or Alteration is defined under the Policy as follows"

> 2. **Forgery or Alteration**
>
>    a. We will pay for loss resulting from "<u>forgery</u>" or alteration of checks, drafts, promissory notes or similar written promises, <u>orders or directions to pay a sum certain in "money"</u> that are:
>
>    (1) Made or drawn upon you; or
>    (2) Made or drawn by one acting as your agent;
>
>    Or that are purported to have been so made or draw.

39. "Forgery" is defined under the Policy to mean the:

> [s]igning of the name of another person or organization with the intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

40. Between February 9, 2018 and February 22, 2018, a third-party (the "**Hacker**") based out of Johannesburg, Boksburg or Kempton Park in the country of South Africa obtained access to several Ryeco executives' computers and email accounts.

41. The unknown Hacker used the Ryeco executive emails to direct to the Bank wire instructions containing the forged signature of one of Ryeco's principles.

42. The Bank, acting upon the wire instructions received from the Hacker wired a total of $1,461, 897.00 to various international accounts located in Indonesia and Thailand.

43. The funds were wired on the following dates and in the following amounts:

February 9, 2018 in the amount of $57,435

February 9, 2018 in the amount of $111,233

        February 9, 2018 in the amount of $76,864

        February 13, 2018 in the amount of $63,500

        February 15, 2018 in the amount of $120,000

        February 15, 2018 in the amount of $96,733

        February 15, 2018 in the amount of $73,565

        February 16, 2018 in the amount of $91,485

        February 16, 2018 in the amount of $84,500

        February 20, 2018 in the amount of $133,435

        February 20, 2018 in the amount of $112,000

        February 22, 2018 in the amount of $119,255

        February 22, 2018 in the amount of $48,364

        February 22, 2018 in the amount of $125,428

        February 22, 2018 in the amount of $148,100

44.    The Bank, consistent with past practices, directed to the Ryeco executive an email confirming the wire transfer. However, the Hacker intercepted and deleted each of the emails before they could be reviewed.

45.    Eventually, Ryeco discovered the infiltration of its' computer system and notified the Bank and Selective.

46.    In response, the Bank retained a third-party cyber-security forensic investigation team. The cyber-security forensic investigation team confirmed the Hacker's infiltration of Plaintiff's computer and email system and the corresponding wire transfer of the foregoing funds.

47.    The Plaintiff provided to Selective the cyber-security forensic report; the forged documents and the FBI IC3 reports detailing the fraud and losses sustained.

48.     Notwithstanding that the events described above established a "covered" loss, Selective failed and refused to pay Ryeco's claim. Defendant's refusal left the Plaintiff in operating distress and forced its executives and principles to advance funds to ensure business could continue to operate in the normal course.

49.     Accordingly, Ryeco, with the Defendant's full knowledge, pursued the Bank to recover some of its losses.

50.     Eventually, the Bank and Ryeco reached a settlement agreement by which the Plaintiff recovered some, but not all, of its losses.

51.     In response, Selective advised Plaintiff that it had voided its coverage by way of the foregoing settlement because it had "impaired" its interest in the claim against the Bank.

52.     Defendant' actions constitute a breach of the foregoing Policy terms and contractual obligations.

53.     As a consequent thereof, the Plaintiff has been damaged.

**Wherefore**, Plaintiff demands judgment against the Defendant for breach of contract; actual, compensatory and punitive damages, attorneys' fees, costs of suit and such other relief as the court deems just and proper.

**Count II**
**Declaratory Judgment**

54.     Plaintiff incorporates by reference the allegations of paragraphs 1 through 53 as is set forth herein at length.

55.     A complaint for declaratory judgment is governed by the provisions of the Declaratory Judgment Act, 42 Pa.C.S § 7531-7541 (the **"Act"**).

56. The granting of a declaratory judgment is a matter within the sound discretion of a court of original jurisdiction.

57. The purpose of a declaratory judgment is to afford relief from uncertainty with respect to rights, status and other legal relations, and is to be liberally construed and administered.

58. A petitioner, whose rights, status or other legal relations are affected by a contract may have determined any question of construction or validity arising therefrom and obtain a declaration of rights, status or other legal relations thereunder.

59. To sustain an action under the Act, a Plaintiff must demonstrate an "actual controversy" indicating inevitable litigation and a direct, substantial and present interest.

60. Currently, an actual, immediate and justiciable controversy exists between the Plaintiff and Defendant. Specifically, the Defendant have refused to pay benefits due and owning under the terms of the Policy.

61. To recover under the terms of the Policy, Plaintiff must demonstrate a loss based on a covered event.

62. In or about September of 2017, Plaintiff purchased the Policy for the express purpose of obtaining coverage to protect its business against a forgery or alteration in connection with its banking and finance obligations.

63. Pursuant to the Policy, Coverage is provided (under the express insuring agreements, limits, exclusions, conditions, definitions and endorsements) on a loss sustained basis for a:

> [l]oss you sustained resulting directly from an "occurrence" taking place during the Policy Period….which is discovered by you during the Policy Period…(Policy § A p. 1).

64. The Coverage Schedule declarations identified that Ryeco was covered for up to $250,000 in losses the event of a "Forgery or Alteration".

65. Forgery or Alteration is defined under the Policy as follows"

> 2. **Forgery or Alteration**
>
> a. We will pay for loss resulting from "<u>forgery</u>" or alteration of checks, drafts, promissory notes or similar written promises, <u>orders or directions to pay a sum certain in "money"</u> that are:
>
> (1) Made or drawn upon you; or
> (2) Made or drawn by one acting as your agent;
>
> Or that are purported to have been so made or draw.

66. "Forgery" is defined under the Policy to mean the:

> [s]igning of the name of another person or organization with the intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose.

67. Between February 9, 2018 and February 22, 2018, a third-party (the "**Hacker**") based out of Johannesburg, Boksburg or Kempton Park in the country of South Africa obtained access to several Ryeco executives' computers and email accounts.

68. The unknown Hacker used the Ryeco executive emails to direct to the Bank wire instructions containing the forged signature of one of Ryeco's principles.

69. The Bank, acting upon the wire instructions received from the Hacker wired a total of $1,461, 897.00 to various international accounts located in Indonesia and Thailand.

70. The funds were wired on the following dates and in the following amounts:

February 9, 2018 in the amount of $57,435

February 9, 2018 in the amount of $111,233

February 9, 2018 in the amount of $76,864

February 13, 2018 in the amount of $63,500

        February 15, 2018 in the amount of $120,000

        February 15, 2018 in the amount of $96,733

        February 15, 2018 in the amount of $73,565

        February 16, 2018 in the amount of $91,485

        February 16, 2018 in the amount of $84,500

        February 20, 2018 in the amount of $133,435

        February 20, 2018 in the amount of $112,000

        February 22, 2018 in the amount of $119,255

        February 22, 2018 in the amount of $48,364

        February 22, 2018 in the amount of $125,428

        February 22, 2018 in the amount of $148,100

71.    The Bank, consistent with past practices, directed to the Ryeco executive an email confirming the wire transfer. However, the Hacker intercepted and deleted each of the emails before they could be reviewed. Eventually, Ryeco discovered the infiltration of its' computer system and notified the Bank and Selective.

72.    In response, the Bank retained a third-party cyber-security forensic investigation team. The cyber-security forensic investigation team confirmed the Hacker's infiltration of Plaintiff's computer and email system and the corresponding wire transfer of the foregoing funds.

73.    The Plaintiff provided to Selective the cyber-security forensic report; the forged documents and the FBI IC3 reports detailing the fraud and losses sustained.

74.    Notwithstanding that the events described above established a "covered" loss, Selective failed and refused to pay Ryeco's claim. Defendant's refusal left the Plaintiff in operating distress and forced its executives and principles to advance funds to ensure business could be maintained as "usual".

75. Accordingly, Ryeco, with the Defendant's full knowledge, pursued the Bank to recover some of its losses.

76. Eventually, the Bank and Ryeco reached a settlement agreement by which the Plaintiff recovered some, but not all, of its losses.

77. In response, Selective advised Plaintiff that it had voided its coverage by way of the foregoing settlement because it had "impaired" its interest in the claim against the Bank.

78. Despite the above Defendant has failed and refused to pay the disability benefits required under the terms of the Policy.

79. Defendant' actions constitute a breach of the foregoing Policy terms and contractual obligations.

80. Plaintiff therefore seeks a judgment of this court declaring that under the terms of the Policy it has suffered a defined "loss" and is entitled to the benefits under the Crime Provisions relating to forgery and alteration financial instruments.

**Wherefore**, Plaintiff respectfully requests a declaratory judgment ordering that the Policy covered Plaintiff's claim and requiring the Defendant pay to Plaintiff the benefits accrued under the Policy and awarding the Plaintiff legal fees, cost of suit and such other relief as the Court deems just and proper.

### Count IV
### Bad Faith-42 Pa. S.C § 8371

81. Plaintiff repeats the allegations of paragraphs 1 through 80 as is set forth herein at length.

82. Bad faith is a statutorily created tort action delineated at 42 Pa.S.C. § 8371 (the "**Statute**"). The Statute states that in an action arising under an insurance policy, if the court

finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorneys' fees against the insurer.

83. The Pennsylvania Supreme Court "has long recognized that '"the utmost fair dealing should characterize the transactions between an insurance company and the insured."'" *Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1149 (Pa. 2013) (quoting *Dercoli v. Pennsylvania Nat. Mut. Ins. Co.*, 520 Pa. 471, 477, 554 A.2d 906, 909 (1989); *Fedas v. Ins. Co. of the State of Pennsylvania*, 300 Pa. 555, 559, 151 A. 285, 286 (1930)).

84. "Moreover, the insurance company has a duty to deal with its insured "on a fair and frank basis, and at all times, to act in good faith.'" *Id*. (citing *Hollock v. Erie Ins. Exchange*, 842 A.2d 409, 416 (Pa.Super.2004)).

85. "To succeed in a bad faith claim, the insured must present clear and convincing evidence that 'the insurer did not have a reasonable basis for denying benefits under the policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.'" *Bonenberger v. Nationwide Mut. Ins. Co.*, 791 A.2d 378, 380 (Pa.Super. 2002) (quoting *O'Donnell v. Allstate Ins. Co.*, 734 A.2d 901, 906 (Pa.Super.1999)).

86. "Bad faith in the context of insurance litigation has been defined as 'any frivolous or unfounded refusal to pay proceeds of [a] policy.'" *Id*. (quoting *Adamski v. Allstate Ins. Co.*, 738 A.2d 1033, 1036 (Pa.Super.1999)).

87. "To constitute bad faith it is not necessary that the refusal to pay be fraudulent. To support a finding of bad faith the insurer's conduct must be such as to "'import[ ] a dishonest purpose.'" *Id*. (quoting *Adamski,* 738 A.2d at 1036)). "It also must be shown that the insurer breached a known duty (i.e., good faith and fair dealing), through some motive of self-interest or ill will." *Id*.

88. Plaintiff purchased the Policy for the express purpose of obtaining coverage to protect its business against a forgery or alteration in connection with its banking and finance obligations.

89. As detailed above the Defendants denial was in bad faith as the "loss' sustained was based on a forged instrument directed to the Bank for payment by a third party. The "wire" transfer instructions form, containing a principal of Ryco's forged signature meets the definitional criteria of "<u>forgery</u>" or alteration of ……<u>directions to pay a sum certain in "money"</u> to an outsider.

90. Selective' s refusal to pay is a breach of its implied covenant of good faith and fair dealing.

91. Moreover, the Defendant did not have a reasonable basis for denying benefits under the Policy and that the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim.

92. The Defendants' practices and procedures constitute a violation of the Statute and Plaintiff is therefore entitled to damages.

**Wherefore**, Plaintiff respectfully requests judgment consistent with the Statute for damages both actual, compensatory and punitive, interest, attorneys' fees and such other relief as the Court deems just and proper.

## Count IV
### Breach of the Implied Covenant of Good Faith and Fair Dealing

93. Plaintiff repeats the allegations of paragraphs 1 through 92 as if set forth herein at length.

94. Every contract imposes on each party a duty of good faith and fair dealing in its performance and enforcement. This duty prohibits an insurance carrier from acting to defeat the intent of the policy sold to its insured by acting arbitrarily or in a manner never intended by its terms. There is implied in connection with the sale of an insurance policy and administration of a claim a covenant of good faith and fair dealing.

95. Plaintiff purchased the Policy for the express purpose of obtaining coverage to protect its business against a forgery or alteration in connection with its banking and finance obligations.

96. As detailed above the Defendants denial was in bad faith as the "loss' sustained was based on a forged instrument directed to the Bank for payment by a third party.

97. The "wire" transfer instructions form, containing Ryeco's executive's forged signature meets the definitional criteria of "<u>forgery</u>" or alteration of ……<u>directions to pay a sum certain in "money"</u> to an outsider.

98. Selective's refusal to pay is a breach of its implied covenant of good faith and fair dealing.

**Wherefore**, Plaintiff respectfully requests judgment for bad faith, statutory interest and damages as set forth in the Statute, damages, both actual and punitive, attorneys' fees and such other relief as the Court deems just and proper.

**Jury Trial Demand**

Plaintiff respectfully requests a trial by jury.

**Harty Law Group, PLLC**

BY: *s/ Thomas S. Harty, Esq.*
    Thomas S. Harty, Esq. ( Pa ID: 49987)
    Harty Law Group, PLLC
    325 Chestnut Street
     Suite 1116
    Philadelphia Pa. 19106
     267-262-5650
    Attorney for Plaintiff