# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RYECO, LLC** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 20-3182 |
| | : | |
| **SELECTIVE INSURANCE COMPANY** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                        **May 13, 2021**

      Businesses buy insurance to limit losses from anticipated harm. We today address a business seeking coverage under a Forgery or Alteration coverage provision in its insurance policy after hackers accessed its email system to send wire transfer instructions to its bank directing hundreds of thousands of dollars from its bank account to the hackers. The hackers used the business's email system and apparently cut and pasted signatures of the business's officers from other wire transfer forms. The business purchased one form of insurance against forgery or alteration which limited coverage to losses from forged or altered checks, drafts, promissory notes, and similar documents directing payment of a sum. The insurer offered other coverage for losses caused by fraudulent instructions to forward funds or computer theft. The business did not choose to purchase the fraudulent instruction or computer theft coverage. The business now seeks coverage arguing the hackers forged its officers' names on wire transfer forms which it argues falls under the forgery or alteration coverage. We disagree. The business purchased coverage for forgery or alteration to a check, draft, promissory note, or similar instruction to pay funds. Each of those documents, and ones like them, can be negotiated and paid on demand by a third party. A wire transfer instruction, like an email, is not negotiable. It is an instruction to send money. The insurer alternatively offered coverage for losses caused by a fraudulent instruction, but the business did not purchase the coverage for this policy year. We enter summary judgment for the insurer.

I. **Undisputed material facts.**[1]

Ryeco, LLC is a full-line fruit and vegetable receiver and distributor in Philadelphia.[2] Ryeco purchased an insurance policy from Selective Insurance Company, including commercial crime coverage, effective September 24, 2017 (the "Policy").[3] Selective's commercial crime coverage offered several options including "Forgery or Alteration," "Funds Transfer Fraud," and "Computer Fraud" coverage.[4] Ryeco purchased the Forgery or Alteration coverage.

*Forgery or Alteration coverage.*

Selective, in Section A.2.a. of the Policy, agrees to provide Forgery or Alteration coverage:

Forgery or Alteration.
a. We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are (1) Made or drawn by or drawn upon you; or (2) Made or drawn by one acting as your agent; or that are purported to have been so made or drawn.[5]

The parties agreed to define "forgery" in the Policy as: "the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any purpose."[6]

*Funds Transfer Fraud coverage.*

Selective, in Section A.7 of the Policy, agrees to provide Funds Transfer Fraud coverage:

Funds Transfer Fraud
We will pay for loss of "funds" resulting directly from a "fraudulent instruction" directing a financial institution to transfer, pay or deliver "funds" from your "transfer account."[7]

The terms "fraudulent instruction" and "transfer account" are defined by the Policy. "Fraudulent instruction" means:

a. An electronic, telegraphic, cable, teletype, telefacsimile or telephone instruction which purports to have been transmitted by you, but which was in fact fraudulently transmitted by someone else without your knowledge or consent; b. A written instruction (**other than those described in Insuring Agreement A.2.**) issued by you, which was forged or altered by someone other than you without your knowledge or consent, or which purports to have been issued by you, but was in fact fraudulently

2

issued without your knowledge or consent; or c. An electronic, telegraphic, cable, teletype, telefacsimile, telephone or written instruction initially received by you which purports to have been transmitted by an "employee" but which was in fact fraudulently transmitted by someone else without your or the "employee's" knowledge or consent.[8]

"Transfer account" means:

an account maintained by you at a financial institution from which you can initiate the transfer, payment or delivery of "funds": a. By means of electronic, telegraphic, cable, teletype, telefacsimile or telephone instructions communicated directly through an electronic funds transfer system; or b. By means of written instructions (**other than those described in Insuring Agreement A.2.**) establishing the conditions under which such transfers are to be initiated by such financial institution through an electronic funds transfer system.[9]

There is no dispute Ryeco did not buy this coverage.

### *Computer Fraud coverage.*

Selective, in Section 6 of the Policy, agrees to cover loss from "computer fraud":

Computer Fraud
We will pay for loss of or damage to "money", "securities" and "other property" resulting directly from the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises": a. To a person (other than a "messenger") outside those "premises"; or b. To a place outside those "premises."[10]

There is no dispute Ryeco did not buy this coverage.

### *Policy exclusions.*

The parties agreed as to three material exclusions from coverage:

- the Policy excludes Funds Transfer Fraud coverage for written instructions provided in the Forgery or Alteration coverage relating to checks, drafts, promissory notes or similar written promises, orders or directions to pay a sum certain;[11]

- the Policy excludes from Computer Fraud coverage "[l]oss resulting from a 'fraudulent instruction' directing a financial institution to transfer, pay or deliver 'funds' from your 'transfer account'" covered under the Funds Transfer Fraud provision;[12]

- the Policy excludes from Funds Transfer Fraud coverage "loss resulting from the use of any computer to fraudulently cause a transfer of 'money', 'securities' or 'other property'" covered under the Computer Fraud provision.[13]

***Ryeco suffers a loss after hackers infiltrate its email accounts and network.***

In January 2018, Ryeco's Vice President of Operations Filindo Colace forwarded Ryeco's signed Resolution of Limited Liability Company to its long-time bank, United Savings Bank.[14] Ryeco's Resolution authorized the Bank "to honor facsimile and other non-manual signatures and may honor and charge [Ryeco] for all negotiable instruments, checks, drafts, and other orders for payment of money drawn in the name of [Ryeco] on its regular accounts, including an order for electronic debit, whether by electronic tape, or otherwise . . ." signed by Mr. Colace or officers Michael Reilly, Sr. and Michael Reilly, Jr.[15] A Wire Transfer Agreement offered Ryeco "an electronic funds transfer service . . . by which funds may be transferred electronically."[16] The Wire Transfer Agreement required the Bank to "honor and execute any and all telephonic, written, facsimile requests or orders for the transfer of [Ryeco's] funds . . .."[17]

A hacker gained access to Mr. Colace's email account a month later. Posing as Mr. Colace, the hacker sent emails to the Bank directing it to execute wire transfers consistent with Wire Transfer Authorization Forms attached to the emails.[18] From February 9 to February 22, 2018, the hacker used Mr. Colace's email to direct the Bank to wire money from Ryeco's account to other banks and companies in fifteen different transactions totaling approximately $1,462,000.[19] The Wire Transfer Authorization Forms, all for transfers over $30,000, purportedly bore the signatures of Mr. Colace and Mr. Reilly, Jr.[20]

There is no dispute Mr. Colace did not send the emails and neither he nor Mr. Reilly, Jr. signed the Wire Transfer Authorization Forms attached to the emails. When Ryeco and the Bank discovered the fraud, the Bank retained a cyber security expert to perform a forensic investigation.[21] The security expert concluded the fraudulent emails from Mr. Colace's account originated from South Africa.[22] The hacker gained access to Ryeco's network and/or email

accounts, learned Mr. Colace is the individual at Ryeco who requests wire transfers from the Bank, and then masqueraded as Mr. Colace and requested a funds transfer.[23] Because the hacker had access to Mr. Colace's legitimate email account, the hacker could then intercept any email communications from the Bank back to Mr. Colace, and continue to masquerade as Mr. Colace throughout the wire verification process.[24]

Ryeco and the Bank settled their dispute without full reimbursement to Ryeco. Ryeco then demanded the full policy limits from Selective under the Forgery or Alteration endorsement. Selective denied the claim explaining the Forgery or Alteration provision did not apply to fraudulent instructions to wire money.[25]

Ryeco sued Selective for breach of contract, declaratory judgment, bad faith, and breach of the duty of good faith and fair dealing.[26] Ryeco agreed to dismiss its bad faith claim during discovery and did not address Selective's motion seeking summary judgment on the duty of good faith and fair dealing.[27]

## II. Analysis

The parties now cross-move for summary judgment agreeing there are no genuine issues of material fact and judgment may be entered as a matter of law.[28] Ryeco contends its loss is covered under the Forgery or Alteration provision because the Wire Transfer Authorization Forms, forged with Mr. Colace's and Mr. Reilly, Jr.'s signatures, are directions to pay a sum certain. Selective argues the Wire Transfer Authorization Form is not covered by the Forgery or Alteration provision because it is not a check, draft, promissory note or "similar written promise," order or direction to pay a sum certain and is not "made or drawn upon" Ryeco. Selective readily admits it would have covered the loss *if* Ryeco had purchased Funds Transfer Fraud coverage. Ryeco did

not purchase Funds Transfer Fraud coverage. Selective argues Ryeco bought the wrong insurance for a business paying its creditors by wire instructions.

Ryeco's experienced counsel also properly and candidly admits the Funds Transfer Fraud coverage would have provided coverage if Ryeco had purchased it but argues the Forgery or Alteration provision also provides coverage for this loss. Both parties agree there are no disputed genuine issues of material fact. They also agree there does not appear to be a case addressing this Forgery or Alteration coverage language in the context of a fraudulent wire transfer instruction. The parties also agree the sole issue is whether the Forgery or Alteration provision applies as a matter of contract interpretation and question of law for our determination.

A. **We interpret the agreed Policy language as a contract.**

The parties agree Pennsylvania law applies to the Policy. Under Pennsylvania law, we must read the Policy as a whole and construe it according to the plain meaning of its terms.[29] The interpretation of an insurance contract "regarding the existence or non-existence of coverage" is a question of law for us.[30] We must give effect to clear and unambiguous policy language.[31] Where contract language is ambiguous, we construe the language in favor of the insured.[32] An insurance contract is ambiguous where it is "reasonably susceptible of different constructions and capable of being understood in more than one sense."[33] We must not "distort the meaning of the language or resort to a strained contrivance in order to find an ambiguity."[34]

Selective and Ryeco agree the Policy is unambiguous. They dispute how we should interpret the Forgery or Alteration provision, each arguing the plain language of the provision applies in its favor.

6

*Selective's interpretation of the Forgery or Alteration coverage.*

Selective contends coverage under the Forgery or Alteration provision is triggered only where there is a forgery of a check, draft, promissory note or similar written promise, order or direction to pay a sum certain in money either made or drawn by or drawn upon Ryeco or made or drawn by someone acting as Ryeco's agent.

Selective argues neither the emails sent from Mr. Colace's hacked email account nor the fake Wire Transfer Authorization Forms attached to the hacked emails are "written promises, orders or directions" to pay a sum certain "similar" to checks, drafts or promissory notes. Selective argues the Forgery or Alteration provision's "similar written promises, orders or directions" to pay a sum certain must be a negotiable instrument, citing cases from federal courts around the country construing the Forgery or Alteration provision as applying only to negotiable instruments.[35] Selective analogizes to the Uniform Commercial Code defining negotiable instrument as "an unconditional promise or order to pay a fixed amount of money . . . (1) payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) is payable on demand or at a definite time; and (3) does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . ."[36]

Selective argues a Wire Transfer Authorization Form could not be presented to a bank and negotiated for payment. Selective urges us to apply the interpretive canon of *ejusdem generis* "where general words follow an enumeration of persons or things, by words of a particular and specific meaning, such general words are not to be construed in their widest extent, but are to be held as applying only to the persons or things of the same general kind or class as those specifically mentioned."[37] The phrase "similar written promises, orders or directions to pay a sum certain in 'money'" follows the more specific terms "checks, drafts, [or] promissory notes" which are

negotiable instruments. Selective points to Ryeco's failure to cite any case where a court interpreted the Forgery or Alteration provision broadly and other than in the context of a negotiable instrument.

All the cases cited by Selective involve forged emails fraudulently directing (essentially tricking) a company employee to execute a wire transfer believing the direction to do so came from a legitimate authority. In *CustomMade Ventures Corp. v. Selective Insurance Co.*, Judge Woodlock found a forged email promising a job to a prospective employee at a certain salary is not a "check, draft, promissory note or similar written promise, order or direction to pay a sum certain."[38] In *Midlothian Enterprises, Inc. v. Owners Insurance Co.*, Judge Gibney found a fraudulent email directing an employee to execute a wire transfer is not a "covered instrument" as defined by the policy as "[c]hecks, drafts, promissory notes, or similar written promises, orders[,] or directions to pay a sum certain in money." [39] Judge Gibney applied the principle of *ejusdem generis* when interpreting a list of specific terms followed by a general term, the general term must not be construed in its widest scope but by those items in the specific list, and found the term "or similar written promises, orders, or directions" modified the specific list of items: checks, drafts, or promissory notes.[40] In *Vons Companies, Inc. v. Federal Insurance Co.*, Judge Moreno found fraudulent invoices, purchase orders, and wiring instructions from the insured company are not the same as a forgery of a negotiable instrument "or its equivalent" and the policy requires "documents of the same type and effect as checks and drafts."[41] In *Medidata Solutions Inc. v. Federal Insurance Co.,* Judge Carter found a Forgery or Alteration provision did not apply to a fraudulent email directing an employee to initiate an electronic funds transfer.[42] The policy language there required a "direct loss resulting from Forgery or alteration of a Financial Instrument committed by

8

a Third Party."⁴³ The parties disputed whether a spoofed email constituted a forgery.⁴⁴ The court found even if the email is a forgery, an email is not a "financial instrument."⁴⁵

In *Taylor & Lieberman v. Federal Insurance Co.*, the Court of Appeals for the Ninth Circuit found a Forgery or Alteration provision did not apply to fraudulent emails instructing an accounting firm to wire money because emails are not financial instruments likes checks and drafts.⁴⁶ And in *Metro Brokers, Inc. v. Transportation Insurance Co.*, the Court of Appeals for the Eleventh Circuit found a Forgery or Alteration provision did not apply because electronic fund transfers authorized by a hacker gaining access to an employee's log-in credentials at the company's bank, are not checks, drafts, promissory notes, or bills of exchange, and a "written promise, order or direction to pay" is not "similar to" the enumerated instruments.⁴⁷ Relying on *Taylor v. Lieberman*, Judge Dorsey in *Sanderina LLC v. Great American Insurance Co.,* found the Forgery or Alteration provision did not apply to fraudulent emails from the insured company's owner to the controller directing electronic funds transfers because the policy unambiguously required "directions to pay a sum certain in money" to be "similar" to "checks, drafts, [and] promissory notes.⁴⁸

Our research uncovered one other case where a court found coverage under a Forgery or Alteration provision arising from a fraudulent email directing an employee to execute wire transfers because the emails constitute a "direction[] to pay a sum certain in money" sent by a hacker "impersonating" the president of the company and within the plain language of the policy.⁴⁹ This out-of-Circuit decision from a Magistrate Judge involved a policy identifying coverage for an impersonator and is an outlier among the cases identified by the parties and our own research.

***Ryeco's interpretation of the Forgery or Alteration coverage.***

Ryeco argues the plain language of the Forgery or Alteration provision applies here. It argues a hacker accessed Mr. Colace's email and then forged his signature and Mr. Reilly, Jr.'s signature on the fifteen Wire Transfer Authorization Forms. The Wire Transfer Authorization Forms directed the Bank to pay a sum certain to a third party and the Bank paid the hacker a sum certain. Ryeco objects to Selective's argument inserting the "negotiable instrument" requirement into the Policy's language. Ryeco argues no such language is in the Policy and, if Selective wanted such a requirement, it should have included the language in the Policy it drafted. Ryeco urges us to find the Wire Transfer Authorization Forms are written directions to pay a sum certain in money because its agreement with the Bank requires the Bank to "honor and execute any and all telephonic, written, facsimile requests or orders for the transfer of [Ryeco's] funds . . . when such requests are made in accordance with the Bank's Funds Transfer Procedures."[50]

Ryeco distinguishes the cases cited by Selective because those cases involved fraudulent emails directing payments via wire transfer. It argues the insured's employees made the wire transfers after being duped by fraudulent emails. Ryeco argueswe face a different type of commercial crime because the hackers not only sent fraudulent emails from Mr. Colace's email to the Bank but also forged the Wire Transfer Authorization Forms causing the Bank to make the wire transfers. Ryeco is not arguing the emails are forged documents; it is relying upon the Wire Transfer Authorization Forms.

We agree with Ryeco the facts today are different from those in the cases relied upon by Selective. In those cases, hackers sent fraudulent emails to the insureds' employees to dupe the employees into making legitimate wire transfers. The hackers harming Ryeco forged the Wire

Transfer Authorization Forms with Mr. Colace's and Mr. Reilly, Jr.'s signatures causing the Bank to make the wire transfers. We have no legitimate wire transfer here.

**B.     The Forgery or Alteration terms do not cover this wire transfer instruction.**

Although we are dealing with different facts in the nature of the direction to the bank, we find the false Wire Transfer Authorization Form is most like an email.  It is a direction to the bank to do something. It is not negotiable.  The Bank required the Form to effect the wire transfer of funds in much the same way emails would accomplish without the Bank's specific requirements. Ryeco cannot force a third party to honor its Wire Transfer Authorization Form in much the same way an email to a bank with instructions may bind the bank to act but is not negotiable.

The Forgery or Alteration provision, when read as a whole, does not afford coverage to Ryeco. Applying *ejusdem generis* interpretation principles, the Wire Transfer Authorization Forms authorizing the Bank to make the wire transfers are not "similar written promises, orders or directions to pay a sum certain of 'money'" because they are not similar to checks, drafts, or promissory notes. Where general words follow a specific list, we must not construe them in their broadest sense; we must construe them like those specifically listed.

Reading the Policy as a whole, we cannot find the Forgery or Alteration provision applies where the Funds Transfer Fraud provision also applies if Ryeco had purchased that coverage. The Policy's commercial crime coverages do not overlap: the Computer Fraud provision does not cover Funds Transfer Fraud and the Funds Transfer Fraud provision does not cover Computer Fraud.[51] The term "fraudulent instruction" in the Funds Transfer Fraud provision covers a written instruction "***other than*** those described in [the Forgery or Alteration]" provision.[52] Construing the Policy as a whole, the various commercial crime coverages apply to different risks and specifically exclude overlapping coverage. We must "take care not to 'violate the cardinal principle of

11

interpretation that an insurance policy must be construed in such a manner as to give effect to all of its provisions.'"[53]

We do not find Ryeco's agreement with the Bank to "honor" Ryeco's Wire Transfer Authorization Forms transforms the Forms into something similar to a check, draft, or promissory note. The Bank and Ryeco agreed as to the method of notice to the Bank for a wire transfer. Their agreed notice protocol does not transform the non-negotiable direction into a document similar to a check, draft, or promissory note especially when the insurer offers, and Ryeco declined to purchase, coverage for fraudulent instructions to send a wire transfer.

## III. Conclusion

We grant Selective's Motion for summary judgment and deny Ryeco's Motion for summary judgment.

---

[1] Our Policies require a Statement of Undisputed Material Facts ("SUMF") and an appendix in support of summary judgment. Selective filed its Motion and brief in support of summary judgment and SUMF at ECF Doc. Nos. 26 and 26-1; Ryeco responded at ECF Doc. No. 28; and Selective replied at ECF Doc. No. 33. Ryeco filed its Motion and brief in support of summary judgment and SUMF at ECF Doc Nos. 27-2 and 27-5 and Selective responded at ECF Doc. No. 29. The parties filed a Joint Appendix, Supplemental Appendix, and Supplemental Joint Appendix at ECF Doc. Nos. 26-2 through 26-5; 27-6; and 29-2.

[2] ECF Doc. No. 27-5, Ryeco SUMF ¶ 2.

[3] ECF Doc. No. 26-1, Selective SUMF ¶¶ 2, 8.

[4] ECF Doc. No. 26-2, Joint Appendix at 3a-4a.

[5] *Id.* at 3a.

[6] *Id.* at 17a, § 7.

[7] *Id.* at 4a, § 7.

[8] *Id.* at 17a, § 8 (emphasis supplied).

[9] *Id.* at 18a, § 21 (emphasis supplied).

12

[10] *Id.* at 4a, § 6.

[11] *Id.* at 17a, § 8.b; 18a § 21.

[12] *Id.* at 7a, § D.4.b.

[13] *Id.*, § D.5.

[14] ECF Doc. No. 27-5, Ryeco SUMF ¶ 20; ECF Doc. No. 27-6, Supplemental Appendix at 169a.

[15] ECF Doc. No. 27-6, Supplemental Appendix 163a ¶¶ 16-18; 169a. The Resolution required two authorized signatures for transactions of $30,000 or more. *Id.* at 169a. Only Mr. Colace, Mr. Reilly, Sr., and Mr. Reilly, Jr. were authorized to sign authorization forms.

[16] ECF Doc. No. 27-6, Supplemental Appendix 163a ¶ 120; 171a,

[17] *Id.* at 171a.

[18] *Id.*

[19] ECF Doc. No. 26-1, Selective SUMF ¶ 10.

[20] ECF Doc. No. 27-5, Ryeco SUMF ¶ 33.

[21] ECF Doc. No. 26-4, Joint Appendix at 112a-139a.

[22] *Id.* at 122a.

[23] *Id.*

[24] *Id.* Ryeco asserts the hackers either lifted the signatures of Mr. Colace and Mr. Reilly, Jr. onto a new Wire Authorization Transfer Form or erased prior information from the Authorization Form, filling in fraudulent information, but used the signatures already appearing on the Form. ECF Doc. No. 27-5, Ryeco SUMF ¶ 33. Selective is unable to admit or deny Ryeco's explanation of how the signatures got onto the Form, but concedes neither Mr. Colace nor Mr. Reilly, Jr. executed the Forms. ECF Doc. No. 26-1, Selective SUMF ¶ 33.

[25] After Ryeco settled with the Bank, Selective advised Ryeco its release of the Bank impaired Selective's right of recovery against the Bank voiding coverage even if the Forgery or Alteration provision applied.

[26] ECF Doc. No. 3.

[27] Ryeco confirmed at oral argument it withdrew its bad faith claim and concedes there is no freestanding claim under Pennsylvania law for the breach of the duty of good faith and fair dealing.

[28] Summary judgment is proper when "the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those 'that could affect the outcome' of the proceeding, and 'a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" *Pearson v. Prison Health Serv.,* 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011)). On a motion for summary judgment, "we view the facts and draw all reasonable inferences in the light most favorable to the nonmovant." *Pearson*, 850 F.3d at 533-34 (3d Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 378 (2007)). "The party seeking summary judgment 'has the burden of demonstrating that the evidentiary record presents no genuine issue of material fact.'" *Parkell v. Danberg*, 833 F.3d 313, 323 (3d Cir. 2016) (quoting *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015)). If the movant carries its burden, "the nonmoving party must identify facts in the record that would enable them to make a sufficient showing on essential elements of their case for which they have the burden of proof." *Willis*, 808 F.3d at 643 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If, after adequate time for discovery, the nonmoving party has not met its burden, pursuant to Federal Rule of Civil Procedure 56, the court must enter summary judgment against the nonmoving party." *Willis*, 808 F.3d at 643 (citing *Celotex Corp.*, 477 U.S. at 322-323).

"This standard does not change when the issue is presented in the context of cross-motions for summary judgment." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (quoting *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). "When both parties move for summary judgment, '[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Auto-Owners Ins. Co.*, 835 F.3d at 402 (quoting 10A Charles Alan Wright et al., FEDERAL PRACTICE & PROCEDURE § 2720 (3d ed. 2016)).

[29] *Westport Ins. Corp. v. Hippo Fleming & Pertile Law Office*s, 791 F. App'x 321, 323 (3d Cir. 2019); *Am. Auto Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011).

[30] *Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286, 290 (Pa. 2007).

[31] *Lomma v. Ohio Nat'l Life Assurance Corp.*, 788 F. App'x 104, 107 (3d Cir. 2019) (citing *Minn. Fire & Cas. Co. v. Greenfield*, 855 A.2d 854, 861 (Pa. 2004)).

[32] *Id.*

[33] *Id.* (quoting *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 558 (3d Cir. 2008)).

[34] *Id.* (quoting *Madison Constr. Co. v. Harleysville Mut. Ins. Co*., 735 A.2d 100, 106 (Pa. 1999)).

[35] *See* ECF Doc. No. 26 at 6-7 collecting cases: *CustomMade Ventures Corp. v. Selective Ins. Co.*, No. 11-10365, 2012 WL 4321060 (D.Mass. Sept. 17, 2012); *Medidata Solutions, Inc. v. Federal Ins. Co.,* 268 F. Supp. 3d 471 (S.D.N.Y. 2017); *Metro Brokers, Inc. v. Transportation Ins. Co.*, 603 F.App'x 833 (11th Cir. 2015); *Midlothian Enter., Inc. v. Owners Ins. Co.,* 439 F. Supp. 3d 737 (E.D. Va. 2020); *Sanderina, LLC v. Great American Ins. Co*., No. 18-772, 2019 WL 4307854

(D.Nev. Sept. 11, 2019); *Taylor & Lieberman v. Fed. Ins. Co.*, 681 F. App'x 627 (9th Cir. 2017); *Vons Cos., Inc. v. Fed. Ins. Co.*, 57 F. Supp. 2d 933 (C.D. Cal. 1998).

[36] ECF Doc. No. 26 at 8, citing UCC § 3-104; 13 Pa. Cons. Stat. Ann. § 3104 (Pennsylvania's Commercial Code).

[37] *Toffler Assocs., Inc. v. Hartford Fire Ins. Co.*, 651 F. Supp. 2d 332, 345 (E.D. Pa. 2009) (quoting *Steele v. Statesman Ins. Co.*, 607 A.2d 742, 743 (Pa. 1992)).

[38] *CustomMade Ventures Corp.*, 2012 WL 4321060 at *5.

[39] *Midlothian Enter., Inc.*, 439 F. Supp. 3d at 743.

[40] *Id.*

[41] *Vons Companies, Inc.*, 57 F. Supp. 2d at 944.

[42] 268 F. Supp. 3d at 480-81.

[43] *Id.* at 480.

[44] *Id.*

[45] *Id.*

[46] *Taylor & Lieberman*, 681 F. App'x at 628-29.

[47] *Metro Brokers, Inc.*, 603 F. App'x at 835.

[48] *Sanderina* , 2019 WL 4307854 at * 3 (citing *Taylor & Lieberman*, 681 F. App'x at 628).

[49] *Ad Advertising Design, Inc. v. Sentinel Ins. Co.*, 344 F.Supp.3d 1175, 1183 (D.Mont. 2018).

[50] ECF Doc. No. 27-6, Supplemental Appendix at 171a.

[51] Joint Appendix at 7a, §§ D.4, D.5,

[52] *Id.* at 17a, § 8.b. (emphasis supplied).

[53] *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 258 (3d Cir. 2019) (quoting *Mut. of Omaha Ins. Co. v. Bosses*, 237 A.2d 218, 220 (Pa. 1968) and citing *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)).